## RICARDO RICKY TABBS *v.* STATE OF MARYLAND

[Nos. 1174 and 1197, September Term, 1978.]

*Decided July 10, 1979.*

The cause was argued before MORTON, MOYLAN and MASON, JJ.

*Albert D. Brault, Assigned Public Defender,* with whom was *Robert Anthony Jacques, Assigned Public Defender,* on the brief, for appellant.

*Ray E. Stokes, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Judith*

*Catterton, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The broad umbrella known as the law of double jeopardy envelops four distinct sub-doctrines: 1) classic former jeopardy, arising out of the common law pleas in bar of *autrefois convict* and *autrefois acquit;* 2) simultaneous jeopardy, involving largely issues of merger and multiple punishment; 3) retrial following mistrial and 4) collateral estoppel. It is the third of these — retrial after mistrial — that concerns us here.

This particular sub-doctrine of law was never considered a part of common law double jeopardy in Maryland, *Hoffman v. State,* 20 Md. 425, 433-434 (1863); *Kyle v. State,* 6 Md. App. 159, 161-162, 250 A. 2d 314 (1969), and is not so considered in England to this day, Friedland, *Double Jeopardy* (Oxford, 1969); Sigler, *Double Jeopardy* (Cornell U. Press, 1969). There was, to be sure, an independent common law tradition, dating from early Stuart times, protecting a defendant from having his trial needlessly aborted by the Crown when a prosecutor or a sympathetic judge sensed that the trial was going badly for the state, *Regina v. Charlesworth,* 121 Eng.Rep. 786 (1861); *Winsor v. Regina,* 122 Eng.Rep. 1150 (1866). A defendant was protected from a retrial when the state (through its judicial or prosecutorial arm) deliberately aborted the first trial in order to obtain hopefully more favorable conditions at a subsequent retrial. *Crist v. Bretz,* 437 U. S. 28, 98 S. Ct. 2156, 57 L.Ed.2d 24, 34-40 (1978) (dissenting opinion by Powell, J.). This valued common law procedural right was early recognized, under federal law, *United States v. Perez,* 22 U. S. (9 Wheat.) 579, 6 L. Ed. 165 (1824), though it was not there treated as a part of protection against double jeopardy. (Indeed, double jeopardy was neither mentioned nor indirectly alluded to anywhere in the now famous *Perez* decision.) This independent, common law procedural protection was applied on occasion over the decades in the federal courts, *Simmons v. United States,* 142 U. S. 148, 12 S. Ct. 171, 35 L. Ed. 968 (1891); *Logan v. United*

*States,* 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429 (1892); *Thompson v. United States,* 155 U. S. 271, 15 S. Ct. 73, 39 L. Ed. 146 (1894). In 1949, in *Wade v. Hunter,* 336 U. S. 684, 69 S. Ct. 834, 93 L. Ed. 974, this common law protection was suddenly and uncritically designated by Justice Black as an aspect of double jeopardy law. *Crist v. Bretz, supra,* at 437 U. S. 43-44. When, subsequent to this uncritical and apparently inadvertent engraftment of an independent trial right onto the body of double jeopardy law, the whole corpus of that double jeopardy law was applied to the states via *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), the new (and somewhat awkward) graft came with it into the due process clause of the Fourteenth Amendment. In any event, as a part of the law of double jeopardy or as an independent common law procedural protection, the interest served is the same.

*Wade v. Hunter, supra,* refers to it as a defendant's "valued right to have his trial completed by a particular tribunal." 336 U. S. at 689. *United States v. Jorn,* 400 U. S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971), refers to it variously as a defendant's "right to go to a particular tribunal," 400 U. S. at 485; the right of a defendant not to be "deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal," 400 U. S. at 484; as "a command to trial judges not to foreclose the defendant's option," 400 U. S. at 485; and "the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate," 400 U. S. at 486. *Downum v. United States,* 372 U. S. 734, 736, 83 S. Ct. 1033, 10 L.Ed.2d 100 (1963), refers to it as "the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him." Pervading this history was society's felt need to forbid the government to terminate deliberately a prosecution which it felt was going badly in the hope of obtaining a more favorable state's verdict at a subsequent trial. An understanding of the purpose of this sub-doctrine and of the dangers it was developed to guard against will facilitate the intelligent mapping of the doctrine's boundaries today.

An immediate and obvious consequence of guarding the defendant's right to control the continuation or termination of the trial is that the doctrine bifurcated into two distinct procedural postures: 1) where the mistrial occurs upon the motion of the prosecution or upon the *sua sponte* motion of the judge and 2) where the mistrial occurs upon the motion of the defendant. In the first situation, control over the law suit has been wrenched away from the defendant and such a declaration of mistrial will be permitted (that is, it will not bar retrial) only when there is a manifest necessity (sometimes referred to as "imperious necessity" or "evident necessity") for the mistrial. Almost all of our constitutional law on the mistrial/retrial problem has occurred within this procedural context. *Wade v. Hunter, supra; Gori v. United States,* 367 U. S. 364, 81 S. Ct. 1523, 6 L.Ed.2d 901 (1961); *Downum v. United States, supra; United States v. Jorn, supra; Illinois v. Somerville,* 410 U. S. 458, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973); *Arizona v. Washington,* 434 U. S. 497, 98 S. Ct. 824, 54 L.Ed.2d 717 (1978). (In two of these cases, *Downum* and *Jorn,* it was held that there was no manifest necessity and that retrial was barred. In all of the other cases, it was held that there was a manifest necessity and that retrial was not barred.) This aspect of the mistrial/retrial doctrine does not concern us in the case at bar.

In the second situation, where the defendant requests a mistrial, control over the immediate question of whether to continue or terminate the proceedings has remained in his hands and ordinarily a retrial would not be barred. This distinction was pointed out in *United States v. Jorn, supra,* at 400 U. S. 485:

> "If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad-faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial."

24

*United States v. Tateo,* 377 U. S. 463, 467, 84 S. Ct. 1587, 12 L.Ed.2d 448 (1964), refers to the same situation:

> "If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him.'"(Emphasis in original)

*United States v. Dinitz,* 424 U. S. 600, 96 S. Ct. 1075, 47 L. Ed. 2d 267, speaks of the foreclosing effect of a defendant's requesting the mistrial in the following terms, at 424 U. S. 607-608:

> "Different considerations obtain, however, when the mistrial has been declared at the defendant's request.
>
> . . . . .
>
> The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with his consent is wholly consistent with the protections of the Double Jeopardy Clause. Even when judicial or prosecutorial error prejudices a defendant's prospects of securing an acquittal, he may nonetheless desire 'to go to the first jury and, perhaps, end the dispute then and there with an acquittal.' "

In two other cases, *Lee v. United States,* 432 U. S. 23, 97 S. Ct. 2141, 53 L.Ed.2d 80 (1977), and *United States v. Scott,* 437 U. S. 82, 98 S. Ct. 2187, 57 L.Ed.2d 65 (1978), a defense motion to dismiss, made and granted while the trial was in progress, was considered to be "functionally indistinguishable from a declaration of mistrial." *Lee v. United States,* at 432 U. S. 31. With respect to the retrial problem where the first trial terminated upon the motion of the defendant, *Lee v. United States* said, at 432 U. S. 32-33:

> "Where the defendant, by requesting a mistrial, exercised his choice in favor of terminating the trial,

the Double Jeopardy Clause generally would not stand in the way of reprosecution."

*United States v. Scott* spoke to the same proposition, at 437 U. S. 93:

> "Where, on the other hand, a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution. 'A motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by a prosecutorial or judicial error.' " (Emphasis in original)

Thus, a mistrial declared upon the motion of the prosecution or of the court will bar a retrial absent manifest necessity; a mistrial declared upon the motion of the defendant will not ordinarily bar a retrial.

There has sprouted, however, in the Supreme Court analysis of mistrial/retrial a tender shoot of dicta (never yet anything even approaching an actual holding) indicating that there may be a minor exception to this otherwise foreclosing effect of a defense request for the mistrial upon the retrial bar. The exception is called "prosecutorial or judicial overreaching" and it first appeared as handwriting on the wall in *United States v. Jorn, supra,* at 400 U. S. 485:

> "Thus, where circumstances develop not attributable to *prosecutorial or judicial overreaching,* a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." (Emphasis supplied)

To state the present problem and to move to the situation now before us, there is some debate as to the meaning of the phrase "prosecutorial or judicial overreaching." It is universally agreed that it embraces an intentional effort on

the part of prosecutor or judge to force a defendant into requesting a mistrial and thereby to sabotage a trial which is going badly from the state's point of view or, alternatively, deliberately to harass a defendant by subjecting him to a series of trials. There is also appearing periodically, however, the additional notion that "prosecutorial or judicial overreaching" includes gross negligence on the part of judge or prosecutor, that is, error necessitating the granting of a mistrial which sprang not from a deliberate purpose to harass or cause a mistrial but simply from the grossly negligent commission of trial error.

The appellant, Ricardo Ricky Tabbs, raises a single contention. He was initially brought to trial for first-degree murder, armed robbery and related counts before Judge Stanley B. Frosh in the Circuit Court for Montgomery County on October 16 and 17, 1978. Upon a potentially damaging blurt by a State's witness during cross-examination, the appellant moved for a mistrial and Judge Frosh granted the motion. On the same day, the appellant moved to dismiss the indictment upon the grounds that a retrial would violate his right against double jeopardy. Judge Frosh denied the motion and the present appeal is taken from that denial.

The issue before us is helpfully simplified by the following concession, made by the appellant in his brief before us:

> "Counsel should state right at the outset that it cannot prove, and therefore does not allege, that the Prosecution's actions both before and during the trial were done with the specific intent of provoking a mis-trial."

The appellant's only contention is that the State's Attorney's Office was guilty of gross negligence, primarily in not taking adequate measures to guard against the damaging blurt, and that this gross negligence constitutes prosecutorial overreaching so as to relieve the appellant of the otherwise foreclosing effect of himself having requested the mistrial.

We affirm the order of Judge Frosh denying the dismissal. Without intimating even remotely that there was any negligence, gross or otherwise, we do not find it necessary

to assess the facts in this regard because of our holding that negligent trial error (even gross) is not a variety of judicial or prosecutorial overreaching.

We deliberately choose this approach to the case because it is of broader precedential significance and because it may serve to lay to rest the ghost of gross negligence which is being raised with increasing and with alarming frequency in the appeals brought to this Court. At the risk of piling Ossa upon Pelion, we attack what we deem to be this misbegotten notion on a number of fronts in the hope that the issue may be settled once and for all, definitively, exhaustively even if exhaustingly.

### Analysis of the Supreme Court Discussions

The appropriateness of looking to the Supreme Court is transcendent in a case such as this, for the Supreme Court is our only possible source of law on this subject. There is no Maryland constitutional provision against double jeopardy. Our sub-constitutional common law of double jeopardy does not embrace the entire mistrial/retrial phenomenon but only has its gears engaged upon the actual rendering of a verdict. *Kyle v. State, supra.* We deal with this problem only by virtue of the mandate of *Benton v. Maryland, supra.*

### A. Direct Statements About "Overreaching":

In *United States v. Jorn, supra,* which first raised intimations that there was something called "prosecutorial or judicial overreaching," the limiting of that "overreaching" to intentional conduct designed to sabotage a trial that was going badly was also strongly intimated. The Supreme Court said, at 400 U. S. 485, n. 12:

> "[W]here a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety *designed to avoid an acquittal,* reprosecution might well be barred." (Emphasis supplied)

In *United States v. Tateo, supra,* the Supreme Court again stressed not simply the intentional commission of error but

the deliberate purpose of provoking a mistrial. It there said, at 377 U. S. 468, n. 3:

*"If there were any intimation* in a case *that* prosecutorial or judicial *impropriety* justifying a mistrial *resulted from a fear that the jury was likely to acquit* the accused, different considerations would, of course, obtain." (Emphasis supplied)

*United States v. Dinitz, supra,* is the one direct mistrial/retrial case we have where the mistrial was requested by the defense. The defense motion was prompted by a judicial error in ordering the defendant's prime counsel to leave the courthouse and insisting that assistant counsel go on with the case. After obtaining the mistrial, the defendant maintained that this judicial error had left him with no choice but to request the mistrial. The United States Court of Appeals for the Fifth Circuit ruled in the defendant's favor, 492 F. 2d 53, *aff'd en banc* 504 F. 2d 854. The Supreme Court reversed, holding that it is not error that bars a retrial but only error deliberately calculated to abort the first trial, saying at 424 U. S. 611:

"The Double Jeopardy Clause does protect a defendant against *governmental actions intended to provoke mistrial requests* and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' ... threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial *so as to afford the prosecution a more favorable opportunity to convict'* the defendant." (Emphasis supplied)

Even accepting, arguendo, that judicial error had occurred and that the error was sufficiently grave to leave the defendant with no choice but to request a mistrial, the Supreme Court could not have been more explicit that only the deliberate and intentional sabotaging of the trial

constitutes judicial overreaching so as to bar a retrial. The Court said, at 424 U. S. 611:

> "[H]ere the trial judge's banishment of Wagner from the proceedings was not done in bad faith *in order to goad the respondent into requesting a mistrial* or to prejudice his prospects for an acquittal. As the Court of Appeals noted, Wagner 'was guilty of improper conduct' during his opening statement which 'may have justified disciplinary action,' ... Even accepting the appellate court's conclusion that the trial judge overreacted in expelling Wagner from the courtroom, ibid., the court did not suggest, the respondent has not contended, and *the record does not show that the judge's action was motivated by bad faith or undertaken to harass or prejudice the respondent."* (Emphasis supplied)

In *Lee v. United States, supra,* the government was at fault for proceeding to trial on a theft indictment that failed to charge scienter. The defendant, just prior to trial, moved to dismiss the indictment. The motion to dismiss was ultimately granted after jeopardy had attached (as a matter of fact, after both sides had rested their cases). The Supreme Court treated the motion to dismiss as the functional equivalent of a request for a mistrial. The Court then stressed, at 432 U. S. 30, that the normal way to correct prosecutorial or judicial error, following a mistrial or an appellate reversal, is to go back and try the case again free from error:

> "The error, like any prosecutorial or judicial error that necessitates a mistrial, was one that could be avoided — absent any double jeopardy bar — by beginning anew the prosecution of the defendant."

The Supreme Court in *Lee* was equally clear about the only type of error which will constitute overreaching, saying at 432 U. S. 33-34:

> "It follows under *Dinitz* that there was no double jeopardy barrier to petitioner's retrial *unless the judicial or prosecutorial error that prompted*

> *petitioner's motion was 'intended to provoke' the motion or was otherwise 'motivated by bad faith or undertaken to harass or prejudice' petitioner....* Here, two underlying errors are alleged: the prosecutor's failure to draft the information properly and the court's denial of the motion to dismiss prior to the attachment of jeopardy. Neither error — even assuming the court's action could be so characterized — was the product of the kind of overreaching outlined in *Dinitz. The drafting error was at most an act of negligence,* as prejudicial to the Government as to the defendant." (Emphasis supplied)

This is the sum total of Supreme Court comment upon overreaching. It is beyond dispute that the evil aimed at was the intentional provoking of a mistrial for the purpose of obtaining a more favorable forum for the state or for the purpose of deliberately harassing the defendant by subjecting him to a series of trials. This ancient but still primary thrust of the bar against retrials following certain deliberately provoked mistrials was reaffirmed as recently as *Arizona v. Washington, supra,* at 434 U. S. 507-508:

> "Although there was a time when English judges served the Stuart monarchs by exercising a power to discharge a jury whenever it appeared that the Crown's evidence would be insufficient to convict, the prohibition against double jeopardy as it evolved in this country was plainly intended to condemn this 'abhorrent' practice."

B. *The Handling of Error in Other Settings; Appellate Reversals, Motions to Dismiss, Mistrials Declared Sua Sponte or at Behest of State:*

What emerges clearly is that the retrial bar is not intended as a sanction against judicial or prosecutorial error committed for any other purpose than to abort the first trial. The reversal of a conviction, the granting of a mistrial and the granting of a motion to dismiss are the common sanctions

employed against all other error. Significant light will be shed upon this subject of overreaching by looking to the ways in which the Supreme Court handles the problem of error, large or small, advertent or inadvertent, intentional or negligent, in those settings. In the interest of sureness, however, let us first establish the validity of the analogy. In *United States v. Tateo, supra,* a judicially provoked guilty plea was deemed to be the functional equivalent of a request for a mistrial. The Supreme Court, at 377 U. S. 466-467, loudly affirmed the analogy between that situation and an appellate reversal following an erroneous conviction:

> "Tateo contends that his situation must be distinguished from one in which an accused has been found guilty by a jury, since his involuntary plea of guilty deprived him of the opportunity to obtain a jury verdict of acquittal. We find this argument unconvincing. If a case is reversed because of a coerced confession improperly admitted, a deficiency in the indictment, or an improper instruction, it is presumed that the accused did not have his case fairly put to the jury. A defendant is no less wronged by a jury finding of guilt after an unfair trial than by a failure to get a jury verdict at all; *the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial."* (Emphasis supplied)

There is, indeed, a close analogy between an appellate reversal of an erroneous conviction upon defense motion and the declaration of a mistrial upon defense motion. The Supreme Court in *Jorn* distinguished this situation from the mistrial declared without the defendant's consent, saying at 400 U. S. 484:

> "[T]he crucial difference between reprosecution after appeal by the defendant [and, by implication, a mistrial at defendant's request] and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and,

perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' "

Looking first to those errors significant enough to cause the appellate reversal of a conviction, it goes without stating that many of them were egregious, were flagrant and were done with the deliberate purpose of enhancing the chance of conviction. It is nonetheless clear that the sanction was the reversal itself and that retrial was not barred. *Brady v. Maryland,* 373 U. S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) (suppression by the State of exculpatory evidence); *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961) (introducing fruits of unreasonable search and seizure); *Pointer v. Texas,* 380 U. S. 400, 85 S. Ct. 1065, 13 L.Ed.2d 923 (1965) (introduction of inadmissible hearsay and denial of right to confrontation). *United States v. Jorn, supra,* spoke to this very point at 400 U. S. 484:

"The determination to allow reprosecution in these circumstances [after reversal of erroneous conviction] reflects the judgment that the defendant's double jeopardy interests, however defined, do not go so far as to compel society to so mobilize its decision making resources that it will be prepared to assure the defendant a single proceeding free from harmful governmental or judicial error."

Indeed, the Supreme Court has within the last year made it absolutely clear that only those reversals based upon the legal insufficiency of the evidence, to wit, those cases which should have resulted in verdicts of not guilty upon the merits, will be reversed outright and that reversals for other varieties of error will result in a remand. *Burks v. United States,* 437 U. S. 1, 98 S. Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,*

437 U. S. 19, 98 S. Ct. 2151, 57 L.Ed.2d 15 (1978). *Burks* explained the rationale at 437 U. S. 15:

> "[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished."

The analogy remains strong when we move from appellate reversals of convictions even to certain mistrials requested by the state. The Supreme Court decision in *Illinois v. Somerville, supra,* argues overwhelmingly against the "gross negligence — overreaching" position. In *Somerville,* a mistrial was declared on the motion of the state and over the strong objection of the defendant. The sole reason for the mistrial was that the state had negligently drafted a defective indictment, omitting the element of *animus furandi* from a larceny charge. Illinois procedure did not permit amendment. It would have been very easy to have dismissed with prejudice or to have barred retrial with pious words about the obligation to protect a defendant from undue harassment. Indeed, on a federal writ of habeas corpus, the United States Court of Appeals for the Seventh Circuit did just that. 447 F. 2d 733. The Supreme Court reversed the Seventh Circuit and held that a retrial was permitted, stressing "the public's interest in fair trials designed to end in just judgments." 410 U. S. at 470. The Court reasoned, at 410 U. S. 468-469:

> "The trial judge was faced with a situation . . . in which a procedural defect might or would preclude the public from either obtaining an impartial verdict

> or keeping a verdict of conviction if its evidence persuaded the jury. If a mistrial were constitutionally unavailable in situations such as this, the State's policy could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned."

The Supreme Court did not cavalierly dismiss society's right to a verdict on the merits, notwithstanding the prosecutorial error, saying at 410 U. S. 469:

> "Here ... the mistrial was, under Illinois law, the only way in which a defect in the indictment could be corrected."

The *Somerville* decision concluded, at 410 U. S. 471:

> "[W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice."

*A fortiori,* a retrial will not be barred where negligent prosecutorial or judicial error has prompted a mistrial at the defendant's request rather than over his objection. In *Lee v. United States, supra,* the prosecutorial error — the drafting of a faulty indictment — was the same as that in *Somerville,* but the procedural posture was different. In *Lee,* it was the defendant who moved to dismiss the indictment. The motion to dismiss was granted after jeopardy had attached. The Supreme Court held that the "drafting error was at most an act of negligence" and since the error was not "motivated by bad faith or undertaken to harass or prejudice," there was no barrier to retrial. 432 U. S. at 34.

In *United States v. Tateo, supra,* we are dealing, virtually foursquare, with the type of error which the appellant urges should be deemed a part of "prosecutorial or judicial

overreaching". Four days into his major felony trial, Tateo was literally "bullied" by the trial judge into entering a plea of guilty. The judge "informed Tateo's counsel that if Tateo were found guilty by the jury he would impose a life sentence on the kidnapping charge and consecutive sentences on the other charges. Upon being told of the judge's position and advised by his counsel that the likelihood of conviction was great, Tateo pleaded guilty, as did his codefendant." 377 U. S. at 464. The Supreme Court held that this forced entry of a guilty plea was the functional equivalent of a request for a mistrial. It then gave its reasons for remanding for a new trial, at 377 U. S. 467:

> "If Tateo had *requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the Government would not have been barred from retrying him." (Emphasis in original)

*United States v. Jorn, supra,* explained, at 400 U. S. 484, n. 11, the refusal of the Supreme Court in *Tateo* to forbid a retrial:

> "[T]here, even though defendant's guilty plea which aborted the trial was subsequently held to have been coerced by judicial action, the defendant nonetheless was not foreclosed of his option to go to the jury if he chose to do so, and thereafter rely on post-conviction proceedings to redress the wrong done to him by the judge."

It is clear that it is not the fact of error itself nor the impact of the error upon the defendant's fortunes that controls in the defense-requested-mistrial/retrial situations, but rather the motivation and purpose that prompted an intentional commission of error. The defense argument that even error not intended to provoke a mistrial, simple negligent error or error intended to enhance the present chance of conviction, will frequently leave a defendant with little choice but to seek

a mistrial was considered and answered by *Dinitz,* at 424 U. S. 609:

> "[T]raditional waiver concepts have little relevance where the defendant must determine whether or not to request or consent to a mistrial in response to judicial or prosecutorial error.... In such circumstances, the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error. The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error."

## C. The Doctrinal Logic:

Yet a third species of analysis yields the same ineluctable result. The Supreme Court has, over the decades, groped to come up with a coherent doctrine to explain why retrials are permitted following appellate reversals of conviction and do not offend the classic plea in bar of *autrefois convict.* A total of three theories have been advanced over the years: 1) the waiver theory, first articulated in *Kepner v. United States,* 195 U. S. 100, 24 S. Ct. 797, 49 L. Ed. 114 (1904); 2) the continuing jeopardy theory, advanced by Justice Holmes and several concurring colleagues in dissent in *Kepner v. United States, supra;* and 3) the practical (and presently prevailing) balancing theory advanced by Justice Harlan in *United States v. Tateo, supra.* Under none of the three theories could the appellant prevail on his proposition that gross negligence is a form of overreaching that will bar a retrial.

Under the waiver theory, the Supreme Court has always maintained, generally citing *Ball v. United States,* 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896), that when the defendant himself requests the reversal of the first conviction (or, by logical extension, the aborting of the first trial in progress), he thereby waives any objection to a retrial. The theory maintains that it is the defendant himself who has been responsible for the termination of the first jeopardy by his explicit request in that regard and that he is, thereby,

estopped to object to the fresh jeopardy which his request has necessitated.

Under the continuing jeopardy theory, it is maintained that there is no second jeopardy but that the first jeopardy continues until (no matter how many stops and starts there are in the meantime) there is a final adjudication on the merits free from error. Under this theory, a retrial following a declaration of mistrial is not a second or double jeopardy but only a continuation of the first jeopardy.

The prevailing theory today, however, is the practical or balancing-of-interests theory put forth most eloquently by Justice Harlan in *United States v. Tateo, supra,* at 377 U. S. 466:

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the *Ball* principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution. In reality, therefore, the practice of retrial serves defendants' rights as well as society's interest."

Under this third theory, error leading to a mistrial would be judged by the same standard as error leading to the dismissal of an indictment or error leading to an appellate reversal, except in those rare cases where the error was

calculated to provoke a mistrial for the deliberate purposes of harassment or of obtaining a more favorable forum. Neither negligent mistakes (gross or otherwise) on the part of judge or prosecutor nor even intentional mistakes calculated to win a present conviction would fall in the category. The balancing of interests is as strong here as in *Tateo*, which was the functional equivalent of a judicially coerced but defense requested mistrial. In *Dinitz* as well, the Court pointed out how ultimately counterproductive to a defendant's interests the "prosecutorial error retrial bar" would be, saying at 424 U. S. 610:

> "The Court of Appeals' determination that the manifest necessity standard should be applied to a mistrial motion when the defendant has 'no choice' but to request a mistrial undermines rather than furthers the protections of the Double Jeopardy Clause. In the event of severely prejudicial error a defendant might well consider an immediate new trial a preferable alternative to the prospect of a probable conviction followed by an appeal, a reversal of the conviction, and a later retrial. Yet the Court of Appeals' decision, in effect, instructs trial judges to reject the most meritorious mistrial motion in the absence of manifest necessity and to require, instead, that the trial proceed to its conclusion despite a legitimate claim of seriously prejudicial error. For if a trial judge follows that course, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is set aside by the trial judge or reversed on appeal."

*Dinitz,* at n. 12, quoted with approval the observation of Judge (now Attorney General) Bell in dissent in the case at the Fifth Circuit level, where he reasoned that that court's decision would "give rise to much reluctance in granting mistrials" because "[t]he trial courts will understand that society will be better served by completing a trial, even after clear error has arisen and the defendant seeks the mistrial, than the

alternative of a mistrial and the possible bar of double jeopardy based on the error." 492 F. 2d at 63.

### The Pedigree of "Gross Negligence" and Its Erosion

With absolutely nothing at the Supreme Court level remotely suggesting "gross negligence" as a variety of overreaching and, indeed, with every sign from that Court pointing in the diametrically opposite direction, one gropes to understand by what strange process of parthenogenesis or genetic mutation the notion ever sprang up. The genealogy is bizarre. It began with an uncritical dictum in the Fifth Circuit in *United States v. Beasley,* 479 F. 2d 1124, in 1973. It was picked up by the same Fifth Circuit, again by way of dictum, in *United States v. Kessler,* 530 F. 2d 1246, in 1976, and from thence it spread to a two-man plurality opinion for the seven-judge Supreme Court of Pennsylvania in *Commonwealth v. Bolden,* 472 Pa. 602, 373 A. 2d 90 (1977), from which it has been quoted far and wide. We will look to the early links in that chain of quotation.

To begin with, *United States v. Beasley, supra,* held that there was no overreaching (whatever that consists of) and that a retrial following a declaration of mistrial was not barred. In the general discussion that preceded the ultimate holding, the opinion summarized the law correctly in one sentence where what was condemned was "gross misconduct" intended to "precipitate a mistrial and thereby gain 'another more favorable opportunity to convict the accused'" when the government sensed that "its case is going badly." In the very next sentence, however, "gross misconduct" is suddenly transmuted to "gross negligence" in a statement ostensibly based on *Wade v. Hunter, supra. Wade v. Hunter,* of course, never mentioned "gross negligence" and was, furthermore, a "manifest necessity" case where a mistrial was declared by the court *sua sponte* and not "an overreaching" case where the defense moved for

40

the mistrial. This critical, albeit careless, passage in *Beasley* is at 1126:

> "It would be offensive to the fundamental constitutional guarantee against successive, oppressive prosecutions, if the government, at a trial in which its case is going badly, could by *gross misconduct* precipitate a mistrial and thereby gain 'another, more favorable opportunity to convict the accused.' ... At the same time, *Wade v. Hunter, supra,* makes it clear that when a mistrial results from prosecutorial error which does not amount to *gross negligence* or intentional misconduct, the state is not barred from reprosecuting the defendant." (Emphasis supplied)

That sort of thinking, researching, analyzing and writing is not precedential or persuasive authority for anything.

It was picked up, however, again purely by way of dictum, in *United States v. Kessler, supra,* three years later. An overreaching as to bar retrial was found in *Kessler* but it was one involving "intentional misconduct by the Government." At one point in the opinion, the court defines "prosecutorial overreaching" at 1256:

> "To find 'prosecutorial overreaching,' the Government must have, through 'gross negligence or intentional misconduct,' caused aggravated circumstances to develop which 'seriously prejudice[d] a defendant' causing him to 'reasonably conclude that a continuation of the tainted proceeding would result in a conviction.' *United States v. Dinitz* . . . ."

For the phrase "gross negligence or intentional misconduct" a footnote cites only to *United States v. Beasley.* The crafting of the opinion is interesting in several other regards. In the above-quoted passage, it appears that *United States v. Dinitz* is authority for the proposition. In actuality, *United States v. Dinitz* is simply the source of the phrase contained in the last three lines. That phrase appears in the original *Dinitz* opinion

in the context of a holding that such a consideration is not, *ipso facto,* reason for barring a new trial. The *Kessler* opinion, moreover, cites to *Green v. United States,* 355 U. S. 184, 78 S. Ct. 221, 2 L.Ed.2d 199 (1957), as authority for the interests served by the protection against double jeopardy. *Green,* of course, dealt with the interest possessed by one who had been acquitted, in effect, of first-degree murder in not being required to run the gauntlet twice for that same degree of murder. It did not bear upon the mistrial/retrial situation. In *United States v. Scott,* 437 U. S. 82, 98 S. Ct. 2187, 57 L.Ed.2d 65 (1978), the Supreme Court pointed out at 437 U. S. 95-96 how inappropriate the *Green* language is in situations where "the defendant is responsible for the second prosecution":

> "Upon fuller consideration, we are now of the view that this language from *Green,* while entirely appropriate in the circumstances of that opinion, is not a principle which can be expanded to include situations in which the defendant is responsible for the second prosecution."

The "Typhoid Mary" of the "gross negligence" notion, however, has been *Commonwealth v. Bolden, supra.* Once again, the pedigree is dangerously suspect. A defendant obtained a mistrial on his own motion on an indictment for murder. On interlocutory appeal, the Supreme Court of Pennsylvania held that a retrial was not barred because there was no overreaching on the part of the prosecution. Even the statement as to what overreaching might consist of was a statement subscribed to by only two members of the seven-judge court. One former chief justice who sat on the case did not participate in the decision. The then present chief justice concurred in the result but not in the opinion. Two justices dissented on the ground that the interlocutory appeal was not properly before the court. Another justice concurred in the result but explicitly dissociated himself from that part of the opinion defining overreaching as including "gross negligence." Only Justice Manderino joined Justice Roberts in the contagious passage now under consideration. The *Bolden* opinion took its definition of overreaching straight

from the Fifth Circuit dicta in *Beasley* and *Kessler. Bolden* said, at 373 A. 2d 108:

> "It is unclear from the Supreme Court cases whether 'overreaching' is limited to intentional misconduct or whether it extends to gross negligence on the part of the prosecutor or judge. It is extremely difficult to establish that prosecutorial or judicial error was intentional. . . . A defendant's rights may not be adequately protected if he is required to prove that the errors were intentional.
>
> The United States Court of Appeals for the Fifth Circuit has taken the position that overreaching involving gross negligence as well as intentional misconduct bars retrial after a defendant's mistrial motion is granted. *United States v. Kessler, supra; United States v. Beasley, supra.* We conclude that the Fifth Circuit's view is warranted by the policies underlying the double jeopardy clause and adopt the position taken in *Kessler* and *Beasley.*"

The holding of the plurality is found at 373 A. 2d 109:

> "A defendant forced to request a mistrial by conduct which conspicuously fails to satisfy professional standards should not be required to bear the heavy burdens incident to reprosecution.
>
> Therefore, we hold that if a mistrial is ordered on defendant's motion due to intentional or grossly negligent misconduct on the part of the prosecutor or judge, reprosecution is barred by the double jeopardy clause. In such circumstances, we find that the interests protected by the double jeopardy clause outweigh the public's interest in conducting a second trial."

The appellant here acknowledges that *Bolden* is his one clear hope of victory.

Within the last year, however, *Bolden* has been overruled in the commonwealth of its birth. In *Commonwealth v. Potter,*

478 Pa. 251, 386 A. 2d 918 (1978), an equally divided court affirmed a conviction upon retrial against a double jeopardy claim. One of the three dissenting justices dealt with a question not here pertinent. Two of the dissenting justices, Roberts and Manderino, continued to argue for the *Bolden* standard which the plurality rejected. The three-man plurality opinion pointed out that *Bolden* had only been the product of two justices in any event. It pointed out further that the traditional Pennsylvania standard had always been to bar a retrial only in those cases where the prosecution deliberately "invited the mistrial in order to secure another, possibly more favorable opportunity to convict the accused." *Commonwealth v. Wright,* 439 Pa. 198, 201, 266 A. 2d 651, 653 (1970). It pointed out how this standard was in line with the opinions of the Supreme Court and announced that it was the standard to which Pennsylvania was returning. It looked to the predicate on which *Bolden* rested and pointed out critically that "the federal cases cited in support of this proposition used 'gross negligence' standards in dictum and are frail reeds upon which to posit such a holding." 386 A. 2d at 923.

The *Potter* plurality rejected the "gross negligence" notion on the merits, saying at 386 A. 2d 925:

"Moreover, we do not agree with the contention that the phrase 'undertaken to harass or prejudice the [accused],' ... includes the concept of 'grossly negligent' conduct simply because it fails to exclude that idea."

The holding of the court was very clear at 386 A. 2d 925-926:

"In sum, the public interest in convicting those guilty of crimes is too important an interest to be subordinated to a concept of a prosecuting attorney's negligence, even though it be labeled 'gross'; defendants are adequately protected by the sanction of complete discharge which is imposed when the government's agent acts with the intent to abort the trial. Accordingly, we believe that retrial should be barred when there is found to have been

prosecutorial misconduct 'intended to provoke mistrial requests,' . . . when the prosecuting lawyer, judged by an objective standard, must be deemed to have been substantially certain that a mistrial would be declared as a result of his questions to witnesses or other conduct at trial."

### The Great Weight of Authority
### in the State Courts

Even before this erosion at its base, the *Bolden* notion did not fare well in the states. In *People v. Baca,* 193 Colo., 562 P. 2d 411 (1977), the Supreme Court of Colorado expressly limited overreaching to instances where the prosecution is motivated "to save its case for another day," saying at 562 P. 2d 414-415:

"Accordingly, while the nature and gravity of the error may be relevant to the motivation of the party committing the error, or may give additional weight to a finding of bad faith the crucial focus must remain upon that motivation.

. . . There is no basis in the record for showing that the prosecution was attempting to save its case for another day by triggering a mistrial. In fact, the prosecution argued vigorously against the mistrial motion.

The record contains no indication of prosecutorial overreaching. The trial court's finding of prejudice as a basis for the mistrial is not enough to bar reprosecution of this defendant."

Wisconsin was equally firm in *State v. Harrell,* 85 Wis.2d 331, 270 N.W.2d 428 (1978), at 270 N.W.2d 431:

"In the context of the double jeopardy clause we define judicial overreaching as conduct that is, egregious rather than merely error. Conduct that is intended to prompt a mistrial request by the defendant or is intended to harass or prejudice the defendant

characterizes judicial overreaching. The kinds of judicial misconduct which lead to defendant's mistrial request and bars reprosecution are seeded in a state of mind of the judge which intends to frustrate the defendant's valued right to but one trial and the avoidance of the delay, expense, anxiety, embarrassment and order of retrial. Allowing mere error, prosecutorial or judicial to bar retrial 'would fail to adequately take into account the public interest in prosecuting and punishing individuals guilty of crime.' ... An intentional act of prosecutorial misconduct has characterized prosecutorial overreaching."

Kansas joined the ranks with *State v. Baylor,* 2 Kan.App.2d 722, 587 P. 2d 343 (1978), saying at 587 P. 2d 346:

"There must be some intent or motivation on the part of the judge or prosecutor 'to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions.'"

In *City of Tucson v. Valencia,* 21 Ariz.App. 148, 517 P. 2d 106 (1973), the court distinguished negligent error from the deliberate sabotaging of a trial not going well, saying at 517 P. 2d 110-111:

"This was not a situation where after several days of trial, the prosecutor realizes that his chances of conviction are weak and deliberately instigates a mistrial in order to obtain a second chance. The introduction of the inadmissible evidence was at most an accident caused by the prosecutor's failure to counsel the witness in advance.

. . . . .

We therefore hold that since the prosecution did not intentionally abort the trial, defendant cannot rely on prosecutorial misconduct to invoke double jeopardy. The City's error at trial, if any, was unintentional and had the same effect at trial as prejudice resulting from any other source."

The problem could not have been more starkly posed than it was in California in the case of *People v. Hathcock,* 105 Cal.Rptr. 540, 504 P. 2d 476 (1973), where a defendant had felt it necessary to move for a mistrial, which was granted, because of repeated and successful attempts of a prosecutor to inject into a murder trial the fact that the defendant had been convicted of "pimping" fourteen years earlier and the insinuation that the victim was killed "because she was not a trusted member of your statewide prostitution ring." The court there held at 504 P. 2d 486:

> "Defendant attempts to dilute the strength of this general principle in the instant case by contending that he cannot 'realistically' be found to have consented to his retrial since his motion for a mistrial was allegedly 'compelled' by the blatantly improper misconduct of the prosecutor. Defendant argues that the prosecutor's misconduct impaled him on the horns of an 'impossible dilemma': if defendant did not ask for a mistrial he ran an increased risk of conviction because of the inflammatory and prejudicial material improperly presented to the jury, while if he did ask for a mistrial and it was granted the prosecutorion would get 'a second crack' at the defendant, having gained the benefit of a full-scale rehearsal of the trial and exposure of the defendant's case.
>
> We fail to see how defendant's 'dilemma' differs in any significant respect from the normal situation arising after possibly prejudicial error has occurred at any trial. In determining whether or not to move for a mistrial, defendants must always weigh the disadvantages of allowing the prosecution to begin its case anew against the benefits of completely eliminating a given trial error; these opposing considerations were certainly as much present in all the cases establishing the general rule of 'consent' as they are in the instant case. (Cites omitted) Nothing in the instant record suggests that the motion for mistrial was other than knowingly and

intelligently made or that the defendant and his counsel were not fully aware of the consequences of the motion. Accordingly there was no violation of the defendant's right not to be placed twice in jeopardy."

As to those prosecutorial errors which constitute "overreaching" and those which do not, the Supreme Court of Alaska was very clear in *Muller v. State,* 478 P. 2d 822, 827 (1971):

"However it is sufficient for the purposes of the instant case to observe that here, the prosecutor's remarks which led to the declaration of a mistrial were negligently made, and fall far short of evidencing the requisite element of prosecutorial misconduct. The appellants have suggested that any misconduct on the part of a prosecutor — including negligent remarks — should bar retrial. We cannot accept this view. Such a rule would fail to adequately take into account the public interest in prosecuting and punishing individuals guilty of crime."

### *The Law in Maryland*

We first alluded to this problem in *Thompson v. State,* 38 Md. App. 499, 381 A. 2d 704 (1978). Judge Thompson, speaking for this Court, there recognized the "intentional provoking of a mistrial" position represented by such cases as *People v. Baca, supra,* but also recognized the "gross negligence" position as represented by the decision of our neighbor to the north, *Commonwealth v. Bolden, supra.* That recognition, of course, was before *Commonwealth v. Bolden* had been overruled. It was not necessary, however, in *Thompson v. State* to address the question directly of what constituted prosecutorial or judicial overreaching and we concluded that "we need not define the boundaries of prosecutorial overreaching in this case because no matter what standard we apply the appellant has failed to demonstrate the existence of any conduct which would invoke the bar of double jeopardy." 38 Md. App. at 503.

In *Whitfield and Little v. State,* 42 Md. App. 107, 400 A. 2d 772 (1979), we mentioned the split of authority around the country but tilted unmistakably toward the intentional provoking of a mistrial side of the fence, particularly with the observation at 400 A. 2d 778:

> "The Assistant State's Attorney vigorously argued against a mistrial. That fact, while not conclusive, at least suggests that there was no intent to 'sabotage' the trial in the hope of gaining a more favorable chance of conviction or abort it because it was going badly.[9]
>
> _____
>
> 9. The State's opposition to the mistrial in the case now before us, arising in point of time as it did, negates the idea of the trial 'going badly.' "

In *Loveless v. State,* 39 Md. App. 563, 387 A. 2d 311 (1978), we committed ourselves firmly to the position strongly indicated by the Supreme Court and against the position represented by the now discredited *Commonwealth v. Bolden.* We said at 39 Md. App. 565-566:

> "A critical distinction is made, however, between deliberate 'prosecutorial or judicial overreaching,' on the one hand, and 'prosecutorial or judicial error,' on the other hand. Mere error, judicial or prosecutorial, even where it is grievous enough 1) to cause a mistrial or 2) to cause an appellate reversal, will not bar a subsequent retrial.
>
> Except in those rare instances where the prosecution or the court has deliberately sabotaged a trial that was going badly, the available redress where an irremediable error is recognized in mid-trial is the declaration of a mistrial followed by a retrial; the available redress where a reversible error has occurred in a trial which runs its full course and results in a conviction is a reversal followed by a retrial.
>
> . . . . .
>
> The only time that retrial is barred under double

jeopardy principles is when there has been such prosecutorial or judicial overreaching as to have mounted to a deliberate and intentional sabotaging of the earlier trial."

What had been considered dicta in *Loveless* became a square holding in *Bell v. State,* 41 Md. App. 89, 395 A. 2d 1200 (1979). Adding the additional authority of the then recently decided Supreme Court case of *United States v. Scott, supra,* Judge Lowe held unequivocally at 41 Md. App. 101:

"Whether the misconduct here was grossly negligent or intentionally perpetrated tactically to gain a trial advantage is of no consequence to the question of retrial. It was not intended to provoke a mistrial, but was, at worst, an intentional foul to win the trial then in progress."

We hold that the "prosecutorial or judicial overreaching" limitation upon the otherwise foreclosing effect of a defense request for a mistrial upon a double jeopardy plea does not comprehend "gross negligence" but only includes intentional error by prosecutor or judge calculated to abort a trial in progress for the deliberate purpose of gaining more favorable circumstances upon retrial or of harassing the defendant by subjecting him to repeated trials.[1] That we believe this to be wise and correct policy is only incidental, for it is not the law of Maryland which we are expounding but the Constitution of the United States. It is not, therefore, the prerogative of the courts of Maryland to make a policy decision in this regard. This is our holding because of the inescapable conclusion that this is in keeping with the letter and with the spirit of every Supreme Court announcement which has been made in this regard. Most particularly, it is in keeping with the most recent pronouncements of that Court.

> *Order denying dismissal of indictment affirmed; costs to be paid by appellant.*

---

1. Trial error by judge or prosecutor which appears to be "gross negligence" is, of course, some evidence of intent. We deliberately use the phrase "appears to be" because we feel the adjectives "negligent" and "intentional" to be mutually exclusive terms.