IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0521-05





EX PARTE JAMES S. MASONHEIMER, Appellee





ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW


AND THE STATE'S CROSS-PETITION FOR DISCRETIONARY REVIEW


FROM THE ELEVENTH COURT OF APPEALS


 TAYLOR COUNTY





 Keller, P.J., filed a dissenting opinion.

 


Oregon v. Kennedy


 In Oregon v. Kennedy, the Supreme Court articulated the standard under the federal
constitution for determining when a mistrial that is granted at the request of the defendant gives rise
to a double jeopardy violation: "Only where the governmental conduct in question is intended to
'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to
a second trial after having succeeded in aborting the first on his own motion." (1) The Court stated this
exclusive standard not once, but twice, the second time saying, "the circumstances under which such
a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those
cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke
the defendant into moving for a mistrial." (2) Intent to provoke a mistrial is an essential requirement
in this context. Under the federal constitution, no other circumstances will give rise to a jeopardy
bar. As the Court correctly notes, we recently adopted this federal standard as a matter of state
constitutional law. (3)

 The Court nevertheless holds that double jeopardy can bar retrial when the prosecutor does
not intend to provoke a mistrial. The Court finds in the present case that the prosecutor withheld
information "with the intent to avoid the possibility of an acquittal" and construes Kennedy to erect
a double jeopardy bar to retrial. I believe that Kennedy does not support this conclusion. 

 The Court reads ambiguity into the above statements in Kennedy, based upon the Supreme
Court's citations to United States v. Dinitz (4) and United States v. Tateo. (5) But in Kennedy, the
Supreme Court recognized that language taken from its earlier opinions - including Dinitz and Tateo
- might "well suggest a broader rule" than the one the Court ultimately adopted. (6) The Court
acknowledged in Kennedy the confusion created by its prior cases, and the justifiability of that
confusion, and articulated the "intent to provoke a mistrial" standard to resolve this confusion and
clarify the law. (7) 




Cases interpreting Kennedy



 The "intent to avoid an acquittal" standard that the Court adopts is the one articulated by the
Second Circuit in United States v. Wallach. (8) But the Wallach court conceded that its standard
reached further than the Kennedy standard. (9) And other courts, both approving and critical (as well
as the law review article upon which this Court relies) have also acknowledged that the Wallach
standard is not part of the rule articulated in Kennedy, but instead goes beyond it. (10)

 The Court also relies on several cases from Maryland, most prominently Tabbs v. State (11) and
West v. State. (12) But in Tabbs, the court said, "What emerges clearly is that the retrial bar is not
intended as a sanction against judicial or prosecutorial error committed for any other purpose than
to abort the first trial." (13) And according to West, "it is only the deliberate derailing [of the trial] that
will engage the gears of the double jeopardy machinery" (14): 

Ordinarily, when the prosecutor injects error into the trial, grievous as that may be,
the sanction is mistrial or reversal. It is only where the prosecutor deliberately
subverts the right of the defendant to stay with the original tribunal that the double
jeopardy bar becomes the appropriate relief. In distinguishing not between grave error
and lesser error and not between intended error and unintended error, but rather
between deliberate error designed to accomplish Purpose A and deliberate error
designed to accomplish Purpose B, the Supreme Court was emphatic. (15)


The West court expressly distinguished between an intent to obtain a conviction through
improper means and an intent to derail the trial:

Even at the extreme end of the reprehensibility spectrum, however, where the
prosecutor has committed the deliberate foul, there is still this pivotal distinction
between (1) seeking to win the game unfairly and (2), knowing the game is going
awry, deliberately causing it to be cancelled and rescheduled. If the prosecutor wins
the game unfairly, we make him replay it. When the prosecutor deliberately causes
the game to be cancelled unfairly, we do not permit him to reschedule it. This
distinction is what the Supreme Court sought to communicate, as it concluded its
discussion in Oregon v. Kennedy. (16)


Application of Wallach standard


 The Wallach standard was originally conceived as a method of extending double jeopardy
protection against prosecutorial misconduct to post-verdict situations, e.g. to motions for new trial
and appeals. (17) But even if the Wallach standard did apply in the mistrial context, such a standard
should not result in appellant obtaining relief in this case. The suppressed evidence was consistent
with appellee's defensive theories, and so, at the first trial, a continuance to obtain and evaluate the
evidence should have been sufficient to cure any prejudice flowing from suppression. Indeed, the
trial court initially granted a continuance. A defense-requested mistrial was later granted, not
because of the suppression of evidence, but "in the interest of justice" because of a death in the
family of one of the prosecutors. But even if we assumed that the failure to disclose exculpatory
evidence "caused" the mistrial in some sense, the failure to disclose was clearly not the reason for
the mistrial. And if appellee really was interested in proceeding to a verdict with the first jury, he
could have requested another continuance rather than asking to terminate the trial. So the first
mistrial did not implicate appellee's valued right to continue the trial with the first tribunal.

 That leaves the second mistrial. (18) The defendant expressed an intent to plead "no contest,"
which has the same legal effect in Texas (with respect to criminal proceedings) as a guilty plea. (19) 
A defendant who pleads guilty is not entitled to the same kinds of due process protections with
regard to the disclosure of evidence as someone who insists on a contested trial. (20) By pleading "no
contest," a defendant waives his right to a contested trial, although the trial court might permit
evidence contesting guilt in its discretion.

 But even if we treat this second proceeding as a full-blown, contested trial, another problem
appears. The trial in that event would be a bench trial. Kennedy spoke specifically about the right
to proceed with the first jury empaneled. Although it seems reasonable to suppose that Kennedy's
rationale could extend to a bench trial, this poses an additional complicating factor to a decision that
is already depending on an expansion of the Kennedy standard. Some considerations may be
different for a bench trial. Here, if the defendant truly wished to pursue a verdict with the trial judge,
presumably, he could simply have obtained a continuance. (21) The only reason to obtain a mistrial
(and the reason suggested in the trial record here) would be because the defendant would not have
chosen a bench trial if he had known about the exculpatory evidence, but would have taken his
chances with a jury. If that was case, then the defendant was not deprived of the right to have his
case decided by the first tribunal (the trial judge) because, in light of the exculpatory evidence, he
really did not want the trial judge to be his tribunal. By obtaining a mistrial, appellee received the
opportunity to have his case tried by the tribunal he would have chosen absent the misconduct - a
jury.

 Saying all of this does not preclude the possibility of a dismissal with prejudice based on
prosecutorial misconduct that does not meet the Kennedy standard. There is still due process. (22) To
obtain a dismissal with prejudice under a due process claim, however, the defendant must raise the
claim after trial and he must show he suffered actual and irremediable prejudice. (23)

 I respectfully dissent.

Filed: March 21, 2007

Publish
1. 456 U.S. 667, 676 (1982) (emphasis added).
2. Id. at 679 (emphasis added).
3. Ex parte Lewis, 2007 Tex. Crim. App. LEXIS 33 (Jan. 10, 2007).
4. 424 U.S. 600 (1976).
5. 377 U.S. 463, 468 n. 3 (1964).
6. Kennedy, 456 U.S. at 677-678, 678 n. 8.
7. Id. at 679.
8. 979 F.2d 912 (2d Cir. 1992).
9. Id. at 916.
10. Approving: See e.g. People v. Batts, 30 Cal. 4th 660, 695, 68 P.2d 357, 380
(2003)(emphasis added), cert. denied, 540 U.S. 1185 (2004)("illuminates a double jeopardy
interest beyond the narrow one recognized in Kennedy"). State v. Marti, 147 N.H. 168, 171, 784
A.2d 1193, 1196 (2001). Critical: See e.g United States v. Doyle, 121 F.3d 1078, 1084, 1085 (7th
Cir. 1997); United States v. Lewis, 368 F.3d 1102, 1108 (9th Cir. 2004), cert. denied, 543 U.S.
1053 (2005). Hawkins v. Alabama, 318 F.3d 1302, 1309 n. 5 (11th Cir. 2003)("This widening" of
the standard "is not described" as " truly compelled by the Kennedy rule. . . . The inclination to
widen Kennedy represents an independent judgment by these circuits on what the law ought to be
in the circumstances contemplated by those circuit courts in those cases). See Adam M. Harris,
28 Cardozo L. Rev. 931, 942 (2006)(goes "much further doctrinally than Kennedy would seem to
permit").
11. 43 Md. App. 20, 403 A.2d 796 (1979).
12. 52 Md. App. 624, 451 A.2d 1228 (1982).
13. Id. at 30, 403 A.2d at 802-803 (emphasis added).
14. Id. at 625, 451 A.2d at 1230.
15. Id. at 632-633, 451 A.2d at 1234 (emphasis added).
16. Id. at 637, 451 A.2d at 1236 (emphasis added).
17. Wallach, 979 F.2d at 915-916.
18. Both the "Marshall" and "Williams" statements were disclosed before the second
"trial" began, so only the "Upchurch" statement could provide a basis for a double jeopardy
violation occurring at the second "trial."
19. Young v. State, 8 S.W.3d 656, 664 (Tex. Crim. App. 2000).
20. United States v. Ruiz, 536 U.S. 622, 630 (2002)("this Court has found that the
Constitution, in respect to a defendant's awareness of relevant circumstances, does not require
complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea,
with its accompanying waiver of various constitutional rights, despite various forms of
misapprehension under which a defendant might labor").
21. And the defendant was hardly in a position to claim that he had prejudiced his cause
before the judge by initially offering to plead no contest. If the plea proceeding really was not an
"ordinary" no contest plea, but a contested trial in disguise, the trial court was presumably aware
of the situation. If it was an ordinary plea proceeding, then the defendant had no right to the
disclosure of exculpatory evidence at that proceeding, and thus, no grounds for a mistrial.
22. See United States v. Marion, 404 U.S.307 (1971)(due process implicated by prejudicial
pre-indictment delay); United States v. Zuno-Arce, 25 F. Supp. 2d 1087, 1115 n. 36 (C.D. Cal.
1998), aff'd, 209 F.3d 1095 (9th Cir. 2000)(specifically citing due process as a possible
alternative to double jeopardy with regard to prosecutorial misconduct); Peter J. Henning,
Prosecutorial Misconduct and Constitutional Remedies, 77 Wash. U. L. Q. 713, 820-823 (1999).
23. Marion, 404 U.S. at 326; Henning, supra.